IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-718-WJM-SKC

ROBERT BARNES,

    Plaintiff,

v.

SECURITY LIFE OF DENVER INSURANCE COMPANY,

    Defendant.

## ORDER DENYING PROPOSED INTERVENOR-DEFENDANT'S MOTION TO INTERVENE

    In this action, Plaintiff Robert Barnes ("Barnes") brings breach of contract and conversion claims against Defendant Security Life of Denver Insurance Company ("SLD") on behalf of himself and those similarly situated. (ECF No. 1 at 1.) Barnes alleges that SLD failed to comply with the terms of a universal life policy that Barnes purchased from SLD's predecessor in interest. (ECF No. 42 at 1.) Before the Court is a Motion for Leave to Intervene ("Motion") filed by Jackson National Life Insurance Company ("Jackson") and Jackson's Motion for Leave to File Supplemental Brief In Support of Its Motion for Leave to Intervene ("Motion to Supplement"). For the reasons set forth below, the Motion is denied and the Motion to Supplement is denied as moot.

# I. BACKGROUND[1]

Barnes filed suit against SLD challenging the pricing and administration of a universal life insurance policy that he purchased in 1984 (the "Barnes Policy") from Southland Life Insurance Company ("Southland"), a predecessor of SLD. (ECF No. 1 ¶¶ 1, 11.) In particular, Barnes' claims focus on the implementation of the cost of insurance component of the Barnes Policy. (*Id.* ¶¶ 24–35.) Effective October 1, 2004, Southland merged with SLD. Barnes and SLD agree that SLD is the effective and liable insurer for the Barnes Policy. (ECF No. 31 at 4.) Barnes seeks to represent a class of those similarly situated who own certain life insurance policies "issued or administered" by SLD or its predecessors in interest. (*Id.* ¶¶ 4–5.) The scope of the proposed class purports to include policies issued and administered by SLD and its predecessors, some of which SLD administers directly, and some of which have been subject to reinsurance and administration agreements (like the Barnes Policy, as discussed below). (*Id.* ¶ 42; ECF No. 34 at 4.)

In July 2002, Southland transferred certain liabilities for certain life insurance policies, including the Barnes Policy, to the Life Insurance Company of Georgia ("LOG") as a reinsurer. (ECF No. 42-2.) LOG also assumed certain administrative functions for Southland, including authority to set the cost of insurance rates and other charges at issue here. (ECF No. 34 at 6–7.) When Southland and SLD merged in 2004, LOG

---

[1] All ECF page citations are to the page number in the ECF header, which does not always match the cited document's internal pagination.

continued to reinsure and administer certain policies, including the Barnes Policy. (*Id.* at 3.) In 2005, Jackson acquired LOG and assumed responsibility for the administration and reinsurance of the Barnes Policy and others. (*Id.*; *see* ECF No. 42-8 at 2.)

Under the terms of the operative administrative services agreement, Jackson is responsible for

> the establishment and variance of all Non-Guaranteed Elements of the Policies (it being understood that [SLD] shall take into account the recommendations of [Jackson] with respect to the Non-Guaranteed Elements and that [SLD] shall only reject such recommendations in good faith and in light of the intent of the parties and the stated purposes of this Agreement and the Indemnity Reinsurance Agreement).

(ECF No. 42-5 at 13, § 2.2(m)(ii).) In addition, Jackson must adhere to "any other written guidelines and procedures regarding Administrative Services as may reasonably be agreed to by the parties" and "administer and service the Policies in a manner that adheres to . . . the terms and conditions of the Policies." (ECF No. 42-5 at 15, § 2.6.)

The administrative services agreement and reinsurance agreement address SLD and Jackson's rights and obligations when faced with litigation over the Jackson-administered policies. Generally, Jackson "shall sue or defend, at its own expense and in the name of [SLD] when necessary . . . any action brought upon a Policy." (ECF No. 42-5 at 14, §2.3(c).) However, SLD retains "the exclusive right to exercise control of and direction over any claim or litigation involving Retained Liabilities." (*Id.*) When SLD makes a timely notice of a third-party claim, Jackson may "assume the defense and

3

control" of the litigation and may, under certain circumstances, settle litigation without the consent of SLD. (ECF No. 42-6 at 42, § 1.) Importantly, however, SLD cannot settle litigation without Jackson's prior written consent. (*Id.* at 43, § 1(c).) If Jackson exercises its right to assume defense and control of the claim, SLD has the right (but not the obligation) to reasonably participate in (but not control) the defense of claims with its own counsel and at its own expense. (*Id.* at 42, § 1(b).)

On April 26, 2018, SLD sent a notice of claim to Jackson informing Jackson of Barnes' claim implicating life insurance policies for which Jackson had assumed responsibility. (ECF No. 44-2.) While the definition of "Policies" in the reinsurance agreement and administrative services agreement includes only certain policies (*see* ECF No. 42-2 at 10–11; ECF No. 42-5 at 9), SLD's actions make it clear that SLD believes the Barnes Policy is subject to the reinsurance agreement.

On May 7, 2018, Jackson responded to SLD's letter acknowledging its responsibility to indemnify SLD with respect to the Barnes Policy. (ECF No. 44-3.) In its response, Jackson noted that the complaint also implicated SLD policies for which Jackson had no responsibility or indemnity obligations. (*Id.*) In support of Jackson's intervention in this action, Jackson's counsel, Waldemar J. Pflepsen, Jr., submitted a declaration stating that SLD has "withheld its consent to Jackson's counsel entering appearances on SLD's behalf in the Action and to Jackson controlling the defense of the Action." (ECF No. 44-1 at 2, ¶ 5.)

Jackson filed its Motion on August 1, 2018, and the Motion was fully briefed as of

September 5, 2018.  (ECF Nos. 34, 42, 44.)  On October 29, 2018, Jackson filed its Motion to Supplement (ECF No. 52), which Barnes opposed (ECF No. 56).  Jackson raised two additional facts to supplement its original motion: (1) that someone (identified as Barnes' counsel in the Motion to Supplement, but in fact SLD's counsel) stated during a status conference before U.S. Magistrate Judge S. Kato Crews that discovery in general would be easier were Jackson a party to this action; and (2) Judge Crews' finding that Jackson is "contractually obligated to produce" certain documents.  (ECF No 52-1 at 3–4.)  Jackson subsequently filed a notice regarding its Motion to Supplement to clarify that it was SLD's counsel who made the comment regarding Jackson's potential intervention at the status conference.  (ECF No. 55.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 24(a)(2) provides that, on timely motion, the court must permit intervention as of right to anyone who:

> [C]laims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).  Under Tenth Circuit law interpreting this rule, "an applicant may intervene as a matter of right if (1) the application is timely, (2) the applicant claims an interest relating to the property or transaction which is the subject of the action, (3) the applicant's interest may be impaired or impeded, and (4) the applicant's interest is not adequately represented by existing parties."  *Elliott Indus. Ltd. P'ship v. B.P. Am.*

5

*Prod. Co.*, 407 F.3d 1091, 1103 (10th Cir. 2005).

Federal Rule of Civil Procedure 24(b)(1)(B) provides that, on timely motion, the court may permit intervention to anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The decision whether or not to grant a motion for permissive intervention under Rule 24(b) is within the district court's sound discretion. *See, e.g.*, *City of Stilwell v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996). In exercising this discretion, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

### III. ANALYSIS

Jackson seeks to intervene both as a matter of right under Rule 24(a) and permissively under Rule 24(b). (ECF No. 34.) Barnes opposes intervention in any form. (ECF No. 42.) SLD has not filed any briefing indicating its position on intervention. However, during a discussion regarding discovery in a status conference before Judge Crews, SLD's counsel stated that "to me the easier answer is to make [Jackson a] party." (ECF No. 57 at 7; ECF No. 55 at 2.)

#### A.  Intervention as of Right

There are four requirements for intervention as of right: "timeliness, interest, impairment, and inadequate representation." *United States v. Albert Inv. Co.*, 585 F.3d 1386, 1399 (10th Cir. 2009). Failure to satisfy any one requirement is sufficient reason to deny the Motion. *See In re Kaiser Steel Corp.*, 998 F.2d 783, 791 (10th Cir. 1993)

6

("We need not address all four requirements which give rise to a right to intervene, inasmuch as both [proposed intervenors] have failed to show that they have a 'significantly protectable interest' . . . .").

Barnes does not dispute the timeliness of Jackson's motion, but argues that Jackson has not satisfied the other three requirements. (ECF No. 42 at 5–13.) Jackson claims that it has an "interest in defending the manner in which the [Barnes] Policy has been administered by [Jackson]," and that its interest would be impaired or impeded if not permitted to intervene. (ECF No. 34 at 6–8.) For present purposes, the Court presumes, without deciding, the existence of such an interest and an impairment of that interest absent intervention. However, Jackson nonetheless fails to establish inadequate representation, thus foreclosing intervention as of right. *See In re Kaiser Steel Corp.*, 998 F.2d at 791.

The crux of Barnes and Jackson's dispute is whether Jackson's interests are adequately represented by the existing parties. Jackson's "burden to satisfy this condition is 'minimal'" and "the possibility of divergence of interest need not be great in order to satisfy the burden of the applicant[ ]." *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009). However, when "the objective of the applicant for intervention is identical to that of one of the parties . . . we presume representation is adequate." *Tri-State Generation & Transmission Ass'n, Inc. v. New Mexico Pub. Regulation Comm'n*, 787 F.3d 1068, 1072 (10th Cir. 2015) (citations and internal quotation marks omitted); *see also Tudor Ins. Co. v. 1st Nat. Title Ins. Agency,*

*LLC*, 281 F.R.D. 513, 519 (D. Utah 2012) (finding that the parties had identical interests in a judicial declaration regarding liability). An applicant may overcome such a presumption with a "concrete showing of circumstances," including a showing of collusion between existing parties, that the representative has an adverse interest to the applicant, or that the representative failed to represent the applicant's interest. *Tri-State Generation*, 787 F.3d at 1073.

Jackson argues that there is a "distinct possibility that Jackson's and SLD's interests and defense strategies may diverge in this litigation" because of Jackson and SLD's differing administration of various policies. (ECF No. 34 at 8.) Jackson further contends that there is "no reason to expect that SLD can adequately or properly represent the interests of both insurers with respect to the policies that they separately administer." (*Id.*)

Two facts persuade the Court that Jackson's interests are already adequately protected by SLD. First, Jackson and SLD have identical interests in the litigation: defending the cost of insurance coverage, as well as the administration of the subject policies, including the Barnes Policy, from 1984 to present. Jackson claims its interest is in defending the administration of the Barnes Policy, including its interpretation of cost of insurance provisions. (*Id.* at 6.) This is precisely the outcome SLD seeks in the defense of Barnes' claims. Given these identical interests, there is a presumption that SLD's representation is adequate.

To overcome the presumption, Jackson must make a specific, plausible showing

that SLD will not adequately represent its interests. Jackson has not done so. Jackson has not presented anything to suggest that Barnes and SLD are colluding, that SLD has an adverse interest to Jackson, or that SLD has actually failed to adequately represent Jackson's interests in this litigation. Thus, given the record currently before the Court, Jackson has failed to show that its interests would be inadequately represented absent intervention.

Moreover, Jackson has a contractual *right* to control this litigation. (ECF No. 42-6 at 42, § 1.) Jackson contends that SLD has prevented it from exercising its contractual right to direct and control the litigation. (ECF No. 44-1, at 2, ¶ 5.) Jackson then makes an unsupported allegation that SLD has withheld authorization for Jackson to direct the litigation *because of* a divergence of interests. (ECF No. 44 at 9.) The Court will not credit such sweeping, unsupported claims, particularly when the law requires a "concrete showing of circumstances" to support an argument of the divergence in interests between the two insurance companies. The existence of a contractual right to control the litigation significantly bolsters the Court's conclusion that Jackson will be adequately represented in this case; Jackson can itself direct the litigation and provide adequate representation.

If SLD has prevented Jackson from exercising a contractual obligation under the reinsurance and administrative services agreements, Jackson may assert a separate breach of contract claim in an independent action against SLD, or could possibly assert breach of contract as a defense if SLD is ultimately held liable in this litigation. Jackson

9

may pursue such a claim or defense in an appropriate forum and venue, a forum other than this Court and through the vehicle of this litigation.

Because Jackson cannot under the present circumstances establish that SLD does not adequately represent Jackson's interests, the Court finds that Jackson cannot intervene as a matter of right.

**B.     Permissive Intervention**

Alternatively, Jackson argues it meets the requirements for permissive intervention. (ECF No. 34 at 13.) The Tenth Circuit has held that Rule 24 is to be construed liberally in favor of intervention. *Utahns for Better Transp. v. United States Dep't of Trans.*, 295 F.3d 1111, 1115 (10th Cir. 2002). Ultimately, the Court has significant discretion with respect to whether to permit a party to permissibly intervene under Rule 24(b). *Kane Cnty., Utah v. United States*, 597 F.3d 1129, 1135 (10th Cir. 2010).

Permissive intervention requires that the would-be intervenor have a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising its discretion, the court must consider whether intervention will cause undue delay or prejudice to the adjudication of the existing parties' rights, and may also consider "whether the would-be intervenor's input adds value to the existing litigation; [ ] whether the petitioner's interests are adequately represented by the existing parties; and [ ] the availability of an adequate remedy in another action." *United States v. N. Colo. Water Conservancy Dist.*, 251 F.R.D. 590,

599 (D. Colo. 2008).

Jackson contends, and Barnes does not dispute, that Jackson seeks to defend its administration of the Barnes Policy, which is at the center of Barnes' claims against SLD.  (ECF No. 34 at 9–10; ECF No. 42 at 13–14.)  Jackson also argues that the other factors weigh in favor of permissive intervention: the case is in its early stages; no undue delay or prejudice would result; Jackson's presence would add value because Jackson has documents and controls witnesses; Jackson lacks an adequate remedy to defend its actions for which SLD will seek indemnification; and SLD is unable to adequately represent Jackson's interests.  (ECF No. 34 at 10–11.)  Barnes argues against permissive intervention based solely on SLD's adequate representation of Jackson's interests, and does not address Jackson's other arguments.  (ECF No. 42 at 13–14.)

The Court finds that Jackson has not shown that permissive intervention would contribute to the just resolution of this lawsuit.  *See Tri-State Generation & Transmission Ass'n, Inc. v. New Mexico Pub. Regulation Comm'n*, 2014 WL 11430948, at *6 (D.N.M. Aug. 18, 2014), *aff'd*, 787 F.3d 1068 (10th Cir. 2015).  Jackson's control of documents and witnesses is admittedly complicated by its ambiguous status (neither third party nor defendant).  However, Jackson has not adequately addressed why party status is preferable for the purposes of discovery, particularly in light of the availability to Barnes of the issuance of third-party subpoenas, as well as Jackson's contractual obligations during litigation under the reinsurance and administrative services contracts.

In addition, and as discussed above, Jackson has not shown that SLD will inadequately represent its interests, particularly since Jackson has a contractual right to control the litigation. The Tenth Circuit has affirmed denial of permissive intervention where the proposed intervenor's interests were adequately represented by other parties. *Tri-State Generation*, 787 F.3d at 1075.

This more than adequate representation of Jackson's interests by SLD weighs heavily against Jackson's intervention. Although delay is unlikely given the early stage of the litigation, Barnes would be forced to litigate against a company with whom it has no contractual relationship, serving only to increase litigation expenses with no corresponding benefit to the Court's resolution of the claims. Under the circumstances, the Court concludes that permissive intervention is not warranted under these facts. Accordingly, the Motion to Intervene is denied.

### IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Jackson's Motion to Intervene (ECF No. 34) is DENIED; and
2. Jackson's Motion to Supplement (ECF No. 52) is DENIED AS MOOT.

Dated this 21st day of November, 2018.

BY THE COURT:

_____
William J. Martínez
United States District Judge