IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-0718-WJM-SKC

ROBERT BARNES,

    Plaintiff,

v.

SECURITY LIFE OF DENVER INSURANCE COMPANY,

    Defendant,
and

JACKSON NATIONAL LIFE INSURANCE COMPANY,

    Intervenor-Defendant.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS IN PART

This matter is before the Court on Defendant Security Life of Denver Insurance Company's ("SLD") Partial Motion to Dismiss (ECF No. 104) and Intervenor-Defendant Jackson National Life Insurance Company's ("Jackson") Motion to Dismiss Count IV (ECF No. 105) (collectively, "Motions to Dismiss"). Both Motions to Dismiss target Count IV of Plaintiff Robert Barnes' ("Barnes") Complaint (ECF No. 1), which asserts a claim for conversion. For the reasons that follow, the Motions to Dismiss are granted, and Count IV of Barnes' Complaint is dismissed with prejudice.

### I. BACKGROUND

The Court assumes the parties' familiarity with the lengthy procedural history of this action, and accordingly focuses on the facts pertinent to the present Motions to Dismiss.

Barnes brings this action against SLD, challenging the pricing and administration of a universal life insurance policy that he purchased in 1984 from Southland Life Insurance Company ("Southland"). (ECF No. 1 ¶¶ 1, 11.) Effective October 1, 2004, Southland merged with SLD, and the parties agree that SLD is the effective and liable insurer for Barnes' policy. (ECF No. 31 at 4.) Jackson, SLD's parent company, intervened as a defendant on May 5, 2020. (ECF No. 92.)

Barnes seeks to represent a class of those similarly situated individuals who own certain life insurance policies "issued or administered" by SLD or its predecessors in interest, some of which SLD administers directly, and some of which have been subject to reinsurance and administration agreements. (ECF No. 1 ¶ 42; ECF No. 34 at 4.) Barnes alleges that SLD made certain Cost of Insurance ("COI") deductions from his policy's cash value which were not authorized by the policy's terms. (ECF No. 1 ¶¶ 29–37.) Specifically, he claims that the policy's terms provide that COI charges are to be determined based on future mortality expectations. (*Id.* ¶ 26.) Barnes alleges, however, that SLD relied on other factors to calculate the COI rates, which resulted in higher charges to Barnes. (*Id.* ¶¶ 35, 60–63.) Barnes asserts that the impermissible assessment resulted in SLD's retention of his funds in excess of the authorized charges. (*Id.* ¶¶ 69–77.) Barnes brings a total of five claims, which he refers to as "Counts" in his Complaint: Counts I, II and III for breach of contract, Count IV for conversion, and Count V for declaratory and injunctive relief. (*Id.* ¶¶ 52–82.) SLD and Jackson's Motions to Dismiss target only Barnes' conversion claim. (ECF Nos. 104 & 105.)

SLD filed its Partial Motion to Dismiss on June 4, 2020 (ECF No. 104), and Jackson filed its Motion to Dismiss Count IV on the same day (ECF No. 105). Barnes filed Responses to each Motion to Dismiss on June 25, 2020 (ECF Nos. 112 & 113). SLD and Jackson filed Replies to Barnes' Responses on July 9, 2020 (ECF Nos. 116 & 117).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

## III. ANALYSIS

### A. Choice of Law

The Court must first determine what law applies to the resolution of Plaintiff's claims. SLD and Jackson argue that North Carolina law applies, while Barnes asserts that the applicable law is unclear, and either Texas, Colorado, North Carolina, or some yet unknown state's law may be appropriate. (ECF No. 104 at 3 n.2; ECF No. 105 at 2; ECF No. 112 at 5–7.)

Federal courts sitting in diversity apply the forum state's choice of law principles. *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1143 (10th Cir. 2009). Because Barnes filed this action in Colorado, Colorado's choice-of-law rules apply. *See Elliot v. Turner Constr. Co.*, 381 F.3d 995, 1001 (10th Cir. 2004).

Colorado has adopted the Restatement (Second) of Conflict of Laws (the "Restatement") to determine the applicable law to contract and tort actions. *See Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 198 Colo. 444, 447 (Colo. 1979); *First Nat'l Bank in Fort Collins v. Rostek*, 182 Colo. 437, 448 (Colo. 1973). The Restatement provides that rights relating to a life insurance contract "are determined, in the absence of an effective choice of law by the insured in his application, by the local law of the state where the insured was domiciled at the time the policy was applied for . . . ." Restatement (Second) of Conflict of Laws § 192. Barnes signed his life insurance contract in Greensboro, North Carolina, where he was domiciled at the time. (ECF No. 5 at 11.) SLD and Jackson therefore argue that North Carolina law applies. (ECF No. 104 at 3 n.2; ECF No. 105 at 2.)

Barnes asserts, however, that North Carolina law does not necessarily apply, because courts must determine whether another state has a more significant relationship to the action. (ECF No. 112 at 6–7.) He further argues that Section 192 does not apply to issues relating to details of the performance of a contract, which should be governed by the laws of the state where performance occurs. (*Id.* at 5; *see also* Restatement (Second) of Conflict of Laws § 192 cmt. a.) Barnes does not, however, apply his own analysis. Rather, he asserts that it is too unclear at this time to determine which state has the most significant relationship to the action. (*Id.* at 6.) He notes that the laws of Texas, where the Southland signed the policy, or Colorado, where SLD is domiciled, may apply. (*Id.* at 6–7.)

This action arises out of a dispute concerning the life insurance contract, and Section 192 makes clear that North Carolina law, as the location where Barnes was domiciled when he applied for the insurance policy, applies. Restatement (Second) of Conflict of Laws § 192.

However, even assuming that Section 192 is not dispositive, courts employing the "most significant relationship" test state that "[i]nsurance policies generally are interpreted under the law of the state where the policy was issued." *Budd v. Am. Excess Ins. Co.*, 928 F.2d 344, 347 (10th Cir. 1991) (applying California law where policy was signed, issued and delivered, and party was domiciled in California); *see also Fire Ins. Exchange v. Bentley*, 953 P.2d 1297, 1300 (Colo. App. 1998) (applying law of state where policy was issued). As Barnes applied for his policy in North Carolina, the result of this approach is also in accord with applying Section 192, and

North Carolina law would govern under this analysis as well. (ECF No. 5 at 11; *see also* Restatement (Second) of Conflict of Laws § 192.)

Finally, for the sake of thorough analysis, the Court briefly turns to the "most significant relationship" test that Barnes proposes. In determining the state with the most significant relationship to the litigation, the Court is to consider (1) the place of injury; (2) the place where the injury-causing conduct occurred; (3) the parties' residence, place of incorporation, and place of business; and (4) the place where the relationship, if any, between the parties is centered. *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 510 (Colo. 2007) (citing Restatement (Second) of Conflict of Laws § 145 (1971)).

No party makes an argument as to where the injury occurred, or where the injury-causing conduct occurred, whether such conduct was the drafting of the COI provision, the place of a party's execution of the contract, or the domicile of a party. Accordingly, the Court affords no weight to these factors. As stated, Barnes is domiciled in North Carolina, SLD is domiciled in Colorado, and the parties make no mention of Jackson's domicile. This factor, taken with Section 192 and Colorado's approach to insurance contracts, weighs in favor of applying North Carolina law. *See* Restatement (Second) of Conflict of Laws § 192; *Budd*, 928 F.2d at 347. Finally, it is unclear where the parties' relationship is "centered," as they reside in different states, and no party argues that the relationship is centered in a particular state. Thus, the most significant relationship test does not result in a finding that another state has a more significant relationship to this litigation than North Carolina.

Given Colorado's presumption that the law of the state where the insured is domiciled or the policy is issued applies, the Court concludes that North Carolina law applies here. Barnes makes scant if any argument to the contrary, and the four-factor "most significant relationship" test reveals no more appropriate choice of law. Accordingly, the Court applies North Carolina's economic loss doctrine to Barnes' conversion claim.

**B.     Conversion Claim**

SLD and Jackson argue that Barnes' claim is barred by the economic loss doctrine, which provides that a contract claim may not be brought under the guise of a distinct tort claim. (ECF No. 104 at 2; ECF No. 105 at 2.) In North Carolina, the economic loss doctrine "provides that ordinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor." *Legacy Data Access, Inc. v. Cadrillion, LLC*, 889 F.3d 158, 164 (4th Cir. 2018). To sustain a conversion claim, a plaintiff must allege an injury distinct from damages stemming from breach of contract. *Id.* at 158. A tort claim "must be grounded on a violation of a duty imposed by operation of law, not a violation of a duty arising purely from the contractual relationship of the parties." *Id.*

As stated, Barnes brings a claim of conversion against SLD, alleging that it wrongfully withheld funds to which he was entitled by assessing charges on his policy in violation of its terms. (ECF No. 1 ¶ 70.) Specifically, he alleges that SLD deducted more from his policy's cash value "than was authorized by the Policies." (*Id.* ¶ 76.) Thus, the claim arises directly out of the parties' respective contractual obligations.

7

Barnes further cites three North Carolina cases which allowed tort claims to proceed in addition to claims for breach of contract: *Di Frega v. Pugliese*, 596 S.E.2d 456 (N.C. App. 2004); *Lake Mary Ltd. P'ship v. Johnson*, 551 S.E.2d 546 (N.C. App. 2001); and *Makadia v. Cont'l Waste Mgmt. LLC*, 2016 WL 6601440 (E.D.N.C. Nov. 7, 2016). (*Id.* at 10.) In *Legacy Data*, the Fourth Circuit distinguished *Di Frega* and *Lake Mary*, emphasizing that each involved a party acting as a bailee, which gives rise to an independent duty of care. (ECF No. 116 at 4; *see also Legacy Data*, 889 F.3d at 166.) In *Makadia*, the plaintiff sought return of loan money when the defendant did not use the money to buy the specific property that the parties had agreed upon. *See Makadia*, 2016 WL 6601440, at *1 (E.D.N.C. Nov. 7, 2016). The instant action is distinguishable from *Makadia*, as Barnes paid premiums on his policy in exchange for contractual rights, and his claim would not exist but for the alleged breach of that contract. (ECF No. 1 ¶¶ 69–77.)

*Legacy Data* makes clear that North Carolina law disfavors allowance of conversion claims which "threaten[] to transform numerous run-of-the-mine contract cases into tort cases." 889 F.3d at 166. The Court concludes that Barnes' conversion claim is duplicative of his breach of contract claims and is not viable under the economic loss doctrine. It is therefore dismissed with prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. SLD's Partial Motion to Dismiss (ECF No. 104) is GRANTED;
2. Jackson's Motion to Dismiss Count IV (ECF No. 105) is GRANTED; and

3. Barnes' Count IV is DISMISSED WITH PREJUDICE.

Dated this 19th day of January, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge